UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DAVID WEDGE**                                                              **CIVIL ACTION**

**VERSUS**                                                                       **NO. 13-1257**

**CAJUN DEEP FOUNDATIONS, L.L.C.**                               **SECTION "K"(2)**

## ORDER AND REASONS

Before the Court is Defendant, Cajun Deep Foundation, LLC's Motion for Summary Judgment to Dismiss Claims of David Wedge. (Rec. Doc. 20). Cajun Deep Foundation, LLC ("Cajun") contends that plaintiff's contention that he is a Jones Act seaman is without basis in fact or law and as such should be dismissed. Having reviewed the pleadings, memoranda, exhibits, deposition testimony and the relevant law, the Court finds merit in the motion.

**Background**

David Wedge ("Wedge") applied for a superintendent position with Cajun on October 20, 2011. Cajun "specializes in all disciplines of Deep Foundation work including drill shafts, driven piles, auger case in place piles, earth retention, and marine piles." (Rec. Doc. 20-2, Employee Handbook, p. 2 of 2). He was given a conditional job offer on October 21, 2011, which he accepted. For the first week, he underwent training in Cajun's office. (Rec. Doc. 20-6, p. 66-67). He then was assigned to work at the Bayou Segnette Project as a superintendent under the supervision of John Gillis ("Gillis"). (Rec. Doc. 21-2, Affidavit of John Newton Gillis, ¶ 5) ("Affidavit of Gillis").

As a new employee, for the first 90 days, Wedge was to work with a mentor; he was only supposed to be observing Cajuns work habits and safety culture. (Affidavit of Gillis, ¶ 4; Dep. of Wedge, Doc. 20-6 at 73). At no point during his employment was Wedge in charge of any operation. (Affidavit of Gillis, ¶ 4). As a superintendent for Cajun on this project, Wedge could perform his supervisory duties from various locations on the project site. Where he chose to perform his duties was left to his judgment as an experienced superintendent. (Affidavit of Gillis, ¶ 5). Gillis also attested that Wedge was not assigned (permanently or otherwise) to any barge or vessel on any jobs for Cajun on the Bayou Segnette Project or any other project. (Affidavit of Gillis, ¶ 7). As Wedge was in this mentoring stage, his assignments were on a job-by-job and day by day basis. (Affidavit of Gillis, ¶ 8).

Wedge was involved in two phases of this project: (1) the driving of creosote piles on the east bank of Bayou Segnette and (2) the driving metal sheet piles on land on the west bank of Bayou Segnette. He was involved with the creosote pile operation from the second week of his employment until approximately two days before the injury at issue herein occurred. Wedge testified that as to the first assignment, pile driving for a guide wall had to occur on the water and that there were five barges involved in that process. (Dep. of Wedge at 88). Wedge maintains that during that phase of the project, he worked 90 percent of the time on a barge in the bayou (Dep. of Wedge at 63). However, his supervisor, Mr. Gillis, avers that Wedge's job as supervisor did not require that he be on board those barges; however, as superintendent he was permitted to board the barges, when he saw fit, to carry out his duties. (Affidavit of Gillis ¶ 22). Wedge in response to the question as to whether he was told that he could do his job as superintendent from wherever he would like, testified that Cajun never "said that to him." (Dep.

2

at 82.). Wedge apparently used a Conex metal container which was on the main barge to read plans and observe the work as it was being done during the first assignment.

About two days before the accident in question, Wedge was reassigned from the creosote pile driving aspect of the Bayou Segnette project to the steel sheet pile driving aspect. (Dep. of Wedge at 203-04) (Wedge states that he was asked to do a different job). According to his supervisor, John Gillis, there were no plans for him to return to the creosote pile driving. (Affidavit of Gillis, ¶ 9). In his deposition, Wedge further states that he "did not have a crew," rather the crew involved was that of John Gillis and the group that had been doing the creosote work was "split up" with half of the men being deployed to accomplish the sheet pile task. (Dep. of Wedge at 203-204). Wedge also admits that some of the equipment used was different, that a land based crane was used for this task and that this effort occurred on the west bank of Bayou Segnette. This effort was on land.

These contentions are contained for the most part in Cajun's Statement of Material Facts to Which There is No Genuine Issue to Be Tried (Rec. Doc. 20-10) in which it avers that "Wedge was reassigned to supervising the task of driving metal sheet piles, as opposed creosote piles." *Id*. at ¶ 24. The only "proof" adduced to counter these statements and the competent affidavit proof filed to support them, is Wedge's denial that he was a reassigned, rather he maintains that the sheet pile driving was simply another phase of the project. He offers no competent proof to support this contention, and his contention standing alone does not negate the fact that he was redeployed to perform work on land. Moreover, as to Willis' statement that there was no plan for Wedge to return to the creosote pile driving task (or any other operation connected with the same or a "fleet" of vessels), Wedge relies on his own testimony at page 84

of his own deposition which concerned the use of a crane.  This testimony sheds no light on Wedge's duties, or any information concerning as to Cajun's plans for Wedge.  No deposition testimony of any Cajun employee or representative has been offered to create a genuine question of fact in this regard.

On December 19, 2011, while supervising the sheet pile job, Wedge attempted to move a bottle cart by hand when the cart fell and landed on Wedge's left leg, causing a closed left proximal and tibial plateau fracture.  He has had to undergo surgical procedures placing plates and screws as well as diagnostic arthroscopy of the left knee.   He has not returned to work.

Based on these facts, Cajun maintains that Wedge is not a Jones Act seaman as his connection to a vessel was not substantial in nature or duration and his reassignment to sheet pile work precludes Jones Act Status.   The Court will now turn to the legal framework to be applied.

**Standard for Motion for Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996),  citing  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).   However, if the nonmoving party would bear the burden of proof on a claim at trial, the moving party need not negate the

elements of that claim, but only to "point out the absence of evidence supporting the nonmoving party's case."  *Brown v. Trinity Catering, Inc.*  2007 WL 4365384 (E.D. La. Dec. 11, 2007) *citing Stults*, 76 F3d at 656.

When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.   The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986);  *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).   "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' "  *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson  v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor."  *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.   However,

> [c]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment.  The Court has no duty to search the record for material fact issues.  Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851, 857 (5th Cir. 2010).

Moreover, although determination of whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact that is usually a question for a jury to decide, "judgment as a matter of law is mandated where the facts and the law will reasonably support

5

only one conclusion." *Becker v. Tidewater, Inc., et al.,* 335 F.3d 376, 386 (5th Cir. 2003), *citing Harbor Tug and Barge Co. v. Papai,* 520 U.S. 548, 553 (1997).  The plaintiff bears the burden of proof for establishing seaman status.  *Becker,* 335 F.3d at 390, *citing Barrett v. Chevron, U.S.A. , Inc.,* 752 F.2d 129, 132 (5th Cir. 1985).

### Seaman Status under the Jones Act

The Jones Act provides that "any seaman" who sustains personal injury in the course of his employment may maintain an action for damages at law, with the right to trial by jury.  46 U.S.C. §688.  The Act does not define "seaman" and "therefore, leaves to the courts the determination of exactly which maritime workers are entitled to admiralty's special protection." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 374 (5th Cir. 2001)(citing *Chandris*). The inquiry into seaman status requires a determination of whether the injured plaintiff is a "master or member of a crew of any vessel."  *Roberts,* 266 F.3d at 374.  In *Chandris,* the court clearly articulated the test to apply when making the determination of a plaintiff's seaman status.

First, a court determines whether an employee's duties "contribute to the function of the vessel or to the accomplishment of its mission."  *Chandris,* 515 U.S. at 371.  This first prong is very broad and applies to all who work at sea in the service of a ship.  *Id.* at 367.   The second prong of the *Chandris* test requires that a "seaman. . . have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."  *Id.*  With respect to the second prong of the *Chandris* test, the Supreme Court has stated that this part of the test requires the seaman's connection to a vessel to be substantial in both duration (temporal prong) and nature (functional prong).  *Chandris,* 515 U.S. at 371.

As to this second prong, the Supreme Court has stated:

> [t]he fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.

2 *Id.* at 368. Moreover, that status can change upon a change in assignment. The Supreme Court made this clear in *Chandris*:

> When a maritime worker's basic assignment changes, his seaman status may change as well. See *Barrett*, 781 F.2d at 1077 (Rubin, J., dissenting) ("An assignment to work as a crew member, like the voyage of a vessel, may be brief, and the *Robinson* test is applicable in deciding the worker's status during any such employment"); *Longmire*, 610 F2d at 1347, n. 6. For example, we can imagine situations in which someone who had worked for years in an employer's shoreside headquarters is then reassigned to a ship in a classic seaman's job that involves a regular and continuous, rather than intermittent, commitment of the worker's labor to the function of a vessel. Such a person should not be denied seaman status if injured shortly after the reassignment, **just as someone actually transferred to a desk job in the company's office and injured in the hallway should not be entitled to claim seaman status on the basis of prior service at sea.**

*Id.* at 372; *Becker v. Tidewater, Inc.*, 335 F.3d 376, 389 (5th Cir. 2002) (change in coverage under the Jones Act occurs only when the status of worker changes). "Such a reassignment may be one involving a change in the worker's essential duties or the location of where he performs his work." *Encarnacion v. BP Exploration and Production, Inc.*, 2013 WL 968138, *6 (E.D.La. March 12, 2013) *citing New v. Associated Painting Servs., Inc.*, 863 F.2d 1205, 1208 (5th Cir. 1989). Moreover, for the purposes of the Jones Act, a "permanent" assignment means an assignment that is "'for an indefinite period'–not temporary." *Encarnacion,* 2013 WL 968138 at *6 citing Smith v. Nicklos Drilling Co.*, 841 F.2d 598, 599-600 (5th Cir. 1986).

In the case at bar, pretermitting whether Wedge was a seaman with respect to the first assignment he was given, it is clear that as to the second assignment for him–that is supervising the driving of metal sheet piles on land–removed Wedge from seaman status.  Wedge has presented no competent evidence that would indicate that there were any plans for him to be reassigned back to work on the water; indeed, the only evidence presented contradicts that notion.  (Affidavit of Gillis, ¶ 9).  No deposition testimony of any Cajun employee or representative, or for that matter any documentary evidence,  has been presented to show that there was any indication that Wedge's assignment to the driving of the metal sheet piles was not permanent under the Jones Act rubric.  Accordingly,

**IT IS ORDERED** that Defendant, Cajun Deep Foundation, LLC's Motion for Summary Judgment to Dismiss Claims of David Wedge.  (Rec. Doc. 20) is **GRANTED** and judgment shall be entered in favor of Cajun Deep Foundation, LLC and against David Wedge with each bearing its or his respective costs.

New Orleans, Louisiana, this 27th day of March, 2014.

                    **STANWOOD R. DUVAL, JR.**
            **UNITED STATES DISTRICT COURT JUDGE** s